**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| JAMES HOOVER, <br><br> Plaintiff, <br><br> vs. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendant. | Case No. 1:19-cv-6680 |

**COMPLAINT FOR BENEFITS DUE—29 U.S.C. § 1132(a)(1)(B)**

Now comes the Plaintiff, JAMES HOOVER, by his attorney MICHAEL BARTOLIC of THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA, he states:

**INTRODUCTION**

1. This is an ERISA long-term disability insurance case where an insurer found Plaintiff disabled from performing sedentary work, but then abruptly reversed course on its own findings, with no new evidence suggesting any improvement.

2. Though we are seven years after Seventh Circuit precedent, *Holmstrom v. Metropolitan Life Insurance Co.*, 615 F.3d 758 (7th Cir. 2012), holding insurers may not advise claimants certain evidence would help resolve whether the claimant is disabled, and then reject the same evidence when the claimant supplies it and it supports the claim, the practice continues. On multiple occasions, Defendant advised a functional capacity evaluation ("FCE") would help resolve the claim, and even requested an independent medical examination ("IME") by a non-

1

treating physician. All showed Plaintiff cannot do sedentary work, yet Defendant simply rejected the evidence in denying Plaintiff's claim.

3. To make matters worse, Defendant's own internal disability insurance claim review policies and procedures, in effect during the time of this review, require that when Defendant receives an FCE or IME, and its conclusions are consistent with those of treating physicians, the claim reviewer should adopt those conclusions.

4. Plaintiff brings this action pursuant to Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), seeking LTD benefits due pursuant to the terms of an employee benefit plan, and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## THE PARTIES

5. Plaintiff, James Hoover, ("Hoover" or "Plaintiff"), is a former employee of UOP, LLC, a subsidiary of Honeywell International, Inc. (hereafter collectively referred to as "Honeywell"). Honeywell sponsors employee welfare benefit plans, as that term is defined in 29 U.S.C. § 1002(1), which provide both short-term and long-term disability benefits. Incident to his employment with Honeywell, Hoover received coverage under the plan as a "participant" as defined by 29 U.S.C. § 1002(7).

6. Defendant Life Insurance Company of North America ("LINA") is a subsidiary of Cigna Corporation. LINA insures the plan and pays any long-term disability insurance benefits via group insurance policy number VDT-0980084 (the Certificate of Insurance of which is attached hereto as Exhibit 1). Though the policy purports to be issued to a trust in Delaware, the policy was effectively issued to Honeywell in New Jersey.

7. Cigna is the claim review fiduciary of the plan, and through LINA, insures the plan, and is responsible for paying any disability benefits under the plan. For ease of reference,

Cigna and LINA here hereafter collectively referred to as Cigna. Due to its dual role as decision-maker of benefit claims and payor of benefits, Cigna is financially incentivized to deny claims for long-term disability benefits. In addition, recently Cigna announced that it was attempting to sell its group benefits division. Upon information and belief, Cigna has more aggressively denied and terminated group disability insurance claims for the past several years to boost short-term profitability, thereby attempt to increase the price of the business unit in a sale.

## JURISDICTION AND VENUE

8. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a).

9. At all relevant times, Plaintiff lived in the Northern District of Illinois. Venue is thus proper in the United States District Court for the Northern District of Illinois. 29 U.S.C. § 1132(e)(2).

10. The ERISA statute provides a mechanism for administrative or internal appeals of benefit claim denials at 29 U.S.C. § 1133. Those avenues of appeal have been exhausted.

## STATEMENT OF FACTS

11. Hoover is a participant under the plan. As a participant, he was entitled to benefits set forth in the governing insurance policy if he met the definition of Disabled.

12. The applicable insurance policy was effectively issued in New Jersey in 2013, after New Jersey enacted a ban on discretionary clauses in group long term disability insurance policies.

13. The insurance certificate's definition of "Disabled" is:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>   1. unable to perform the material duties of your Regular Occupation; and
>   2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
>   1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
>   2. unable to earn 80% or more of your Indexed Earnings.

(Ex. 1).

14. Hoover worked for Honeywell as a "Draftsman." He began in 2011, and stopped working for Honeywell around June 18, 2015, due to numerous medical conditions. Those forming the basis of this disability claim include severe tricompartmental osteoarthritis in both knees, pain in both knees, lumbar spinal stenosis, post lumbar fusion surgery with subsequent failed back syndrome, lumbar degenerative disc disease, low back pain radiating down his legs, morbid obesity with BMI 61.3, gait dysfunction, balance dysfunction, and dysfunction with activities of daily living (bathing, dressing, toileting).

15. His relevant symptoms include constant low back pain, pain in his legs radiating from his lumbar spine, pain in his knees, and urinary and bowel incontinence caused by nerve damage following surgery. These symptoms make Hoover unable to maintain any one position for a meaningful enough amount of time to maintain employment at even a sedentary level.

16. Based on the employer's job description, and review of the United States Department of Labor's Dictionary of Occupational Titles, Defendant found Hoover's occupation to be a "Structural Draftsman," DOT 005.281-014, a sedentary occupation.

17. Cigna initially denied Hoover's claim for short-term disability on July 14, 2015.

18. Hoover appealed, and supplied a Functional Capacity Evaluation ("FCE") he underwent on September 14, 2015, the results of which were that Hoover had less than sedentary capacity. It found Hoover was unable to sit for more than 10 minutes at a time. The results of this test placed his sitting capacity at the occasional level for a workday, or up to one-third of a day total.

19. On March 10, 2016, Cigna then overturned its denial and approved the remainder of Hoover's short-term disability.

20. On March 17, 2016, Cigna also immediately approved Hoover's long-term disability, finding him disabled from his sedentary occupation through the policy's elimination period, and through that point in time. His long-term disability benefits began October 31, 2015.

21. In August 2016, Hoover's primary care physician, Dr. Rachel Zurek, completed an attending physician statement at Cigna's request and advised Cigna that Hoover could sit about 4 hours total in a day, and he could stand/walk a total of 2 hours in a day. Four hours per day total of sitting falls within the "frequent" range, which means anywhere between one-third and two-thirds of an 8-hour workday. This satisfied Cigna that Hoover remained disabled from his sedentary occupation and to continue paying benefits.

22. In September 2016, Hoover's orthopedist, Dr. Cotton, treating Hoover for his knees, wrote that Hoover could walk less than a city block without rest or severe pain/fatigue, that he could sit for up to 20 minutes at one time, and about 2 hours total in one day, and stand/walk 1–2 minutes at a time, and less than 2 hours total in a day. Hoover's symptoms would require approximately 10 unscheduled breaks during the workday, with such breaks for rest needing to be 30 minutes. This satisfied Cigna that Hoover remained disabled from his sedentary occupation and to continue paying benefits.

23. In April 2017, Cigna asked Dr. Zurek, to complete an attending physician statement and a physical abilities assessment form. The physical abilities assessment form gives broad conclusions about what a claimant can perform, and the attending physician allows the doctor to explain the opinions.

24. On the physical assessment form, Dr. Zurek checked boxes regarding abilities for various activities on a total day basis, such as sitting, standing, and walking. She opined Hoover could sit for a total of between one-third and two-thirds of a day (the "frequent" box), and stand and walk between zero and one-third of the workday (the "occasional" box). She checked boxes stating her conclusions are based on the patient's reports, her own observations, examination, her functional assessment, and "A diagnosis that implies an increased risk of harm requiring physician imposed work activity restrictions."

25. In the attending physician statement, Dr. Zurek write that due to Hoover's chronic low back pain, he could not sit or stand for long periods of time. In response to the question "Could your patient return to work at this time if accommodations were made for the listed restrictions?", she responded "No." Her reason was "Patient must constantly move around, sit up, lie down." In response to whether Hoover would ever be able to return to work, she responded she would defer to an orthopedic surgeon.

26. Notably, Dr. Zurek's responses in April 2017 were completely consistent with her responses in August 2016, the only difference being in August 2016 she was asked to specify a number of hours, and in April 2017 Cigna asked her to provide the limitation within one of only 3 ranges, and her 4-hour limitation fell within the range she chose in April 2017.

27. Cigna received this, and only focused on the checkboxes of capacities, and ignored the prior specificity of hours per day for those capacities.

28. On August 9, 2017, Cigna terminated Hoover's LTD payments, less than 3 months before he reached the end of payments for disability from his Regular Occupation, as the transitional definition would become effective October 31, 2017. Cigna's reason for the termination was that Dr. Zurek opined Hoover could sit frequently, and its in-house nurse case manager agreed that was reasonable. Cigna did not pay attention to the remainder of Dr. Zurek's submission explaining Hoover really could not work due to how frequently he must change positions, and it did not probe at all into where within the "frequent" range of sitting Hoover's ability might fall.

29. Cigna interpreted the same exact evidence two different ways at two different points in time.

30. While some sedentary occupations might be able to be performed by sitting at the highest end of the frequent range, due to ability to change positions with sit-stand office modifications (depending on how frequently one must change said positions), anything less than the uppermost end of the frequent range is insufficient for any full-time sedentary work.

31. In the benefit termination letter, Cigna wrote that information Hoover may wish to submit to help perfect his claim includes an updated Functional Capacity Evaluation ("FCE").

32. On January 30, 2018, Hoover appealed, and submitted exactly what Cigna asked for. He submitted an updated FCE he underwent on October 20, 2017. The updated FCE revealed Hoover was unable to walk more than 110 feet at 0.7 miles per hour, he could not stand for more than 4 minutes at a time, and he could not sit for more than 12 minutes at one time. His total workday ability to sit was again in the "occasional" range due to how short of an initial interval Hoover could complete.

33. On March 15, 2018, Cigna overturned its benefit termination, finding Hoover incapable of performing the sedentary occupation, and reinstated his claim to complete paying him LTD benefits through October 30, 2017.

34. In a strange turn of events, on March 28, 2018, Cigna denied Hoover's claim for disability benefits based on "any occupation" because it found him capable of sedentary work (the same exertion level it found him unable to perform for the last two years). The basis of finding Hoover capable of sedentary work was an opinion from Cigna in-house medical director, Dr. Smith, dated March 8, 2018 (i.e., one week before Cigna found Hoover unable to perform sedentary work).

35. This means once again Cigna reached two different conclusions regarding the same determination (ability to do sedentary work) based on the exact same scope of evidence at two different times, this time a mere 13 days apart.

36. Cigna effectively rejected Dr. Smith's opinion on March 15, 2018 due to weight of evidence to the contrary, but then found it more persuasive than all that same evidence 13 days later on March 28, 2018. There were no other developments or new medical evidence to explain the diametrically opposed decisions of March 15, 2018 and March 28, 2018.

37. At the same time Cigna's reviewer credited a file reviewing consultant's opinion over two treating physician opinions that were consistent with multiple Functional Capacity Evaluations, Cigna's own internal claim policies and procedures commanded claims reviewers that in the event a claim reviewer has an FCE, IME, or medical consultant conclusion that is consistent with treating physician opinions, the claim manager should continue approving the claim.

38. The only way to explain the difference between the March 15, 2018 and March 28, 2018 decisions is thus that the own occupation disability appeal reviewer followed Cigna's procedures and the subsequent claim manager did not.

39. The March 28, 2018 letter also represented that the reviewer considered the Social Security Disability notice of award, but that it had little weight because there was no file with it. However, Hoover submitted the entire Social Security file, including all medical records and reasoning for the approval, to Cigna in June 2017, and again with the January 2018 appeal.

40. On September 24, 2018, Hoover timely appealed the March 28, 2018 adverse decision. He pointed out that there is no way to reconcile the March 15, 2018 and March 28, 2018 decisions, and that Cigna already found Hoover disabled from performing sedentary work based on the same evidence.

41. On November 8, 2018, Cigna upheld the decision. In the decision, Cigna communicated that a medical consultant agreed with the October 2017 FCE. The letter states: "The reviewer agreed with the findings of the FCE as Mr. Hoover was physical functionally limited due to chronic back pain with radiculopathy post laminectomy from DJD as well as bilateral knee osteoarthritis both made worse by morbid obesity which decreased work tolerance." But there is no way to agree with the FCE, and determine Hoover can perform full-time sedentary work. The appeal reviewer, like the prior reviewer, again disregarded internal Cigna policies and procedures that require approving a claim where an FCE and treating physician opinion are consistent.

42. On May 7, 2019, Hoover submitted his voluntary appeal of the decision.

43. After receiving the appeal, Cigna referred Hoover's file to be reviewed by a medical consultant without examining Hoover. Dr. Matthew Chan, certified in Occupational

9

Medicine, provided his report to Cigna on June 19, 2019. Cigna supplied the vendor through whom Dr. Chan was hired with 389 pages of records to review, which is considerably less than all the available records. For example, Cigna's file on the claim produced immediately prior to the filing of this complaint exceeds 2,000 pages.

44. Dr. Chan opines, from a review of medical records alone, that Hoover should be able to work full-time in a sedentary capacity. Dr. Chan characterizes Hoover's 2013 spine surgery as uncomplicated, despite it having left him with nerve damage causing incontinence.

45. Dr. Chan characterized the September 2015 FCE as demonstrating full-time sedentary work capacity, despite it documenting Hoover could sit for 10 minutes at a time, less than 2.5hours per day total, and Cigna found Hoover disabled from sedentary work following receipt of that FCE.

46. Dr. Chan also characterized Hoover's regular occupation of Draftsman as above Light physical exertion, despite Cigna having characterized it as sedentary.

47. Dr. Chan characterized Dr. Zurek's April 2017 physical ability assessment form as showing ability to perform full-time sedentary work. Dr. Chan, however, did not review the earlier August 2016 form which specified her opinion Hoover could sit 4 hours per day total. He disregarded the simultaneous portion of the attending physician statement where she clarified she opined Hoover cannot work. What Dr. Chan meant was if Dr. Zurek's opinion was that Hoover could sit at the uppermost limit of the frequent range, which is wholly inconsistent with everything else she states, then the opinion would be consistent with ability to work in a sedentary occupation. Dr. Chan did not disclose that implied qualification.

48. Dr. Chan characterized the October 2017 FCE as demonstrating full-time sedentary work capacity, despite the report (like the 2015 FCE) giving no such indication, and even Cigna previously found it warranted finding Hoover unable to perform sedentary work.

49. Dr. Chan characterized Hoover's responses to a questionnaire about his ability to perform activities as Hoover being able to cook and shop without any qualifications. Hoover's responses, however, stated he can cook seated, and shop using the electric cart in the stores.

**PART 3: MY ACTIVITIES**

1. Check off which of these things you do regularly  COOK SEATED, SHOP USING ELEC. CART
☒ Cook    ☒ Shop    ☐ Yard work    ☐ Read    ☐ Other (attend school or religious
☐ Clean   ☐ Laundry ☐ Gardening    ☒ Watch TV    services, volunteer work, etc.)

50. Dr. Chan asserts he tried calling Dr. Zurek's office, but was told there is no patient by the name of James Hoover, and there is no Dr. Zurek there. Dr. Chan did not document what telephone number he called.

51. Dr. Chan stated he agreed with the functional capacity evaluations, and that Hoover can work full-time in a sedentary capacity.

52. Cigna received this report on June 19, 2019 and reviewed it. Cigna found the report not reliable enough to warrant upholding the benefit denial.

53. The very next day, on June 20, 2019, Cigna contacted Hoover's counsel and communicated that it would benefit from an independent medical examination ("IME"), and offered to refer Hoover for an IME. Hoover responded that he would arrange one himself.

54. On July 23, 2019, Hoover underwent an IME with Dr. Walter Friberg, a diplomate of the American Board of Independent Medical Examiners. Hoover has no treating relationship with Dr. Friberg, and Dr. Friberg has performed IMEs for Cigna before.

11

55. Mr. Hoover had to be wheeled to the IME in an extra wide wheelchair. On the date of the exam, he was 5'9" tall, and weighed 415 pounds.

56. Dr. Friberg explained his physical examination confirmed the findings of the two functional capacity evaluations. He opined Hoover could sit for 10 minutes at a time, stand five minutes at a time, and walk less than one city block without rest or severe pain/fatigue. He opined Hoover could in total, sit about 4 hours per day, and stand/walk less than 2 hours per day, both with frequent breaks. Hoover would need more than 10 unscheduled breaks per day, of approximately an hour each. With even occasional standing and walking, Hoover would need to use an assistive device to ambulate. He can never twist or stoop.

57. At this point, Hoover had submitted to Cigna multiple treating physician opinions supporting his inability to perform sedentary work, multiple functional capacity evaluations demonstrating his inability to perform sedentary work, and an independent medical examination demonstrating his inability to perform sedentary work, following Cigna's own request for such evidence.

58. After receiving the IME, Cigna asked Dr. Chan to review the IME. On August 19, 2019, Dr. Chan reviewed it, and stated it did not change his opinion.

59. Dr. Chan criticized the IME report because Hoover arrived in what Dr. Chan characterized as a motorized scooter, though the report documents it was a pushed wheelchair, and the video submitted showed Hoover being pushed in a wheelchair.

60. Dr. Chan stated Hoover's use of a wheelchair was inconsistent with the March 29, 2019 orthopedic office visit record. That record, however, states "With all of his pain he is immobilized most of the days unable to walk or do much activity."

61. Dr. Chan contends the March 29, 2019 record was devoid of any clinically significant findings of abnormal gait, or decreased range of motion that would require such a device. The record, however, does not speak one way or another to these things, but clearly documents Hoover's immobilization. The treatment plan section does document "He is unable to ambulate properly throughout the day." This is completely consistent with Dr. Friberg's examination of Hoover's shoes during the appointment, where he documented despite the shoes being two years old, the soles showed not much wear and tear, corroborating Hoover's claim he is unable to walk much.

62. Dr. Chan criticizes the findings that Hoover requires help with some activities of daily living because Hoover reported he can do some other activities unassisted in a questionnaire. The activities are different activities, though. Hoover reported to Dr. Friberg he cannot reach to wipe himself after toileting, and needs help bathing, and the forms Dr. Chan reference refer to cooking and shopping (using a motorized cart). Dr. Chan's analysis is if one can do a single Activity of Daily Living, he must be able to do them all. That is nonsensical.

63. On August 29, 2019, Cigna upheld the benefit termination again, marking a third time Cigna interpreted the same evidence two different ways at nearby points in time. On June 20, 2019, Dr. Chan's opinion was to unreliable to justify upholding the decision. Yet after Cigna got an IME, just like it requested, and it provided even more evidence of disability, Cigna then reversed course and found Dr. Chan's opinion reliable enough to uphold its decision, and even overcome the IME.

64. Hoover exhausted his required pre-litigation remedies under the plan and all conditions precedent to the filing of this action have been performed or have occurred.

13

65. The denial of Hoover's claim for benefits was contrary to the terms of the group insurance policy.

66. The denial was also contrary to Cigna's own internal manual for handling claims. The manual directs reviewers to approve a claim where an FCE and/or IME is consistent with treating physician opinions. Cigna disregarded its own procedure in order to evade paying this claim.

67. LINA failed to provide Hoover with a full and fair review of his claim in violation of 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

68. As a result of LINA's denial of Hoover's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Hoover to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendant, and award Plaintiff all past due LTD benefits;

B. That the Court order Plaintiff's benefits reinstated in the amount equal to the contractual amount of benefits to which he is entitled prospectively, less any applicable offset under the policy, subject to continuing eligibility review by Defendant; and

C. That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment,

D. That the Court award Plaintiff his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

      E.      That the Plaintiff recovers any and all other relief to which he may be entitled.

Respectfully Submitted,


/s/ Michael Bartolic
Attorney for the Plaintiff

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60604
Tel: 312-635-1600
Fax: 312-635-1601
ARDC # 6285708